# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| JACOB PELLEY, AS TRUSTEE OF THE BRADLEY PIERCE BROWN TRUST, | § § § § | |
| *Plaintiff,* | § § | |
| v. | § § | |
| UNITED STATES ARMY CORPS OF ENGINEERS, UNITED STATES DEPARTMENT OF INTERIOR, UNITED STATES FISH AND WILDLIFE SERVICE, PAULA JOHNSON-MUIC, DEB HAALAND, MARTHA WILLIAMS, AND KATHY WHALEY, | § § § § § § § § § § | Civil Action No. 4:23-cv-1105<br>Judge Mazzant |
| *Defendants.* | § | |

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants'[1] Motion to Dismiss (Dkt. #52). Having considered the Motion, the relevant pleadings, and the applicable law, the Court finds that the Motion should be **DENIED.**

### BACKGROUND

This is a property dispute. At issue is the status of a trail ("Crow Hill Trail") crossing a 43.32-acre wildlife refuge and connecting the Brown Family's tract of land to Bennett Road. Plaintiff Jacob Pelley ("Plaintiff"), as Trustee of the Bradley Pierce Brown Trust ("Brown Trust"),

---

[1] Defendants in this case are the United States Army Corps of Engineers ("the Corps"), United States Department of Interior ("DOI"), United States Fish and Wildlife Service ("FWS"), Paula Johnson-Muic, Deb Haaland, Martha Williams, and Kathy Whaley. The Court refers to them collectively as "Defendants."

urges the Court to recognize Crow Hill Trail as a formal easement (Dkt. # 1). The Court begins with a summary of the factual and procedural disposition before turning to the parties' arguments.

## I.     Factual Background

In 1937, the Brown Family acquired 106 acres of real property in Grayson County, Texas, (the "Brown Tract") with a public road running north and south on its westernmost border ("Bennett Road")[2] (Dkt. #1 at p. 6). In 1943, the Corps condemned 43.32 acres of the Brown Tract for the Denison Dam Project (Dkt. #1 at p. 6). The condemned portion of the Brown Tract included all property abutting Bennett Road, leaving the Brown Tract without direct access to Bennett Road. The Final Judgment of the condemnation vested "the full, absolute, fee simple title" of the surface estate to the Corps, "excepting and reserving to the present landowners and all other recorded mineral owners, their heirs and assigns, all oil, gas and other minerals . . . together with the right of ingress and egress to drill for and produce said oil, gas, or other minerals" (Dkt. #1-3).

In 1946, the Secretary of the Interior issued Public Land Order 314 ("PLO 314") creating the Hagerman National Wildlife Refuge ("Hagerman Refuge") (Dkt. #1-2). PLO 314 provided that the 43.32 acres condemned in 1943 would be reserved as a wildlife refuge and controlled by the Corps (Dkt. #1-2). However, PLO 314 explicitly states that the Corps "shall not interfere with any existing or future uses" of the 43.32-acre condemned land (Dkt. #1-2). Thus, the Brown Family retained the mineral estate, along with the existing and future right of ingress and egress for drilling and production (Dkt. #1 at pp. 6–7).

---

[2] The parties use Bennett Road and Bennett Lane interchangeably (Dkt. #52 at p. 3 n.4). The Court will refer to the public road west of the property as "Bennett Road."

For the past eighty years, the Brown Family has accessed the Brown Tract through Crow Hill Trail—a gated, gravel road over the condemned portion connecting the Brown Tract to Bennett Road (Dkt. #1 at p. 8). On March 12, 2020, the Corps declined Plaintiff's request to formalize Crow Hill Trail as an easement benefitting the Brown Tract and burdening the condemned 43.32 acres of the Hagerman Refuge, citing Defendant Whaley's formal objections (Dkt. #52 at p. 4). Whaley claimed that the proposed easement would not support refuge management because such an easement would be inconsistent with the Corps' policy and would violate the laws and regulations governing administration of the Refuge System (Dkt. #52 at p. 4). At some time before May 4, 2020, Defendants posted a notice on the Crow Hill Trail gate (Dkt. #1-15). The notice warned that on May 4, 2020, the gate would be removed and replaced with a barbed wire fence and vehicle access would be revoked (Dkt. #1-15). Defendants then removed all gravel on Crow Hill Trail and removed the Crow Hill Trail gate, replacing it with a footpath-only gate (Dkt. #1 at p. 12). Plaintiff now attempts to regain access to Crow Hill Trail so that he can enjoy the full use and enjoyment of the (currently inaccessible) Brown Tract.

## II.     Procedural Background

In response to Plaintiff and the Brown Family's alleged deprivation of the use and enjoyment of the Brown Tract, Plaintiff filed his Complaint on December 15, 2023, asserting an Administrative Procedures Act claim ("APA") under 5 U.S.C. § 702 (Dkt. #1). On August 8, 2024, Defendants filed their Motion to Dismiss pursuant to Rule 12(b)(6) claiming that Plaintiff incorrectly characterizes this claim as an APA action when it should be governed by a Real Property Quiet Title Action ("QTA") pursuant to 28 U.S.C. § 2409a (Dkt. #52 at p. 5). Under the QTA, Defendants claim that the twelve-year statute of limitations has run, and that Plaintiff suit is barred and should be dismissed (Dkt. #52 at p. 10). Consequently, Defendants submit that Plaintiff failed

to state a claim through which he may seek relief (Dkt. #52 at p. 5). On October 1, 2024, Plaintiff filed his Response to Defendants' Motion to Dismiss and in the Alternative Motion for Leave to Amend Complaint (Dkt. #59). In his Motion, Plaintiff opposes Defendants' basis for dismissal and, alternatively, asks the Court to allow him to amend his Complaint to convert his APA claim to a QTA claim if the Court determines that the QTA is the appropriate avenue through which to pursue his claim (Dkt. #59 at p. 12). On October 8, 2024, Defendants filed their Reply in Support of Motion to Dismiss (Dkt. #61). A week later, Plaintiff filed his Sur-Reply to Defendant's Motion to Dismiss, again requesting leave to amend, if necessary (Dkt. #62).

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Rule 12(b)(6) allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual

content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id*. "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

The instant dispute hinges on which law governs Plaintiff's claim—the QTA or the APA. Defendants insist that the QTA is the exclusive vehicle for this action because it seeks to adjudicate a disputed title to real property in which the United States is a party (Dkt. #52 at p. 5). Plaintiff, of

course, disagrees. In Plaintiff's view, he has properly brought his claim under the APA because this is not a title dispute, but rather an action to enforce an easement (Dkt. #59 at p. 10). The Court agrees with Defendants that only the QTA could possibly give Plaintiff the remedy he seeks. The APA cannot provide relief "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. As the following discussion demonstrates, the QTA forbids recovery under the APA. That begs the next question: if the QTA governs this action, is it barred by limitations? Defendants say yes; Plaintiff says no. The Court addresses each question in turn.

I.     **QTA v. APA**

The Court begins by choosing the applicable law. Once more, Plaintiff insists that this action should be brought under the APA instead of the QTA because establishing the Brown Family's property rights regarding Crow Hill Trail does not raise at title issue (Dkt. #1; Dkt. #59). To seek relief under the APA, the plaintiff must (1) identify some "agency action" which is the basis for judicial review; and (2) demonstrate that they have "suffered legal wrong because of the challenged agency action" or that they have been "adversely affected or aggrieved" by that action "within the meaning of a relevant statute" (Dkt. #1 at p. 12) (citing *Fort Bend Cnty. v. U.S. Army Corps of Eng'rs*, 59 F.4th 180, 189 (5th Cir. 2023); 5 U.S.C. § 702). Even if a plaintiff meets both requirements, the APA expressly bars courts from granting relief "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. It is here that Defendants argue Plaintiff's APA claim fails (Dkt. #52 at pp. 7–9). Indeed, as Defendants observe, the statute that forbids relief is the QTA, as it is the "exclusive means by which adverse claimants [can] challenge the United States' title to real property" (Dkt. #52 at p. 11) (citing *Block v. N. Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 286 (1983)).

6

Plaintiff cites *Sch. Bd. of Avoyelles Parish v. U.S. Dep't. of Interior* ("*Avoyelles*") in support of his APA claim (Dkt. #59 at p. 15 n.56) (citing 647 F.3d 570, 577 (5th Cir. 2011) (recognizing a permitted property right under the National Wildlife Refuge System Administration Act of 1966 ("Refuge Act") and applying the APA to resolve the agency action)). While the Court acknowledges some similarities between *Avoyelles* and the facts here, the Court also finds distinguishing facts that cannot be ignored. *Avoyelles* involved a property dispute regarding two separate tracts of land owned by the Avoyelles Parish School Board. *Id.* at 574. Neither tract was accessible by public road. *Id.* at 575. Thus, accessing the tracts required crossing the Lake Ophelia Wildlife Refuge owned by the United States and operated by FWS. *Id.* at 574–75. Historically, both parcels could be accessed via a passage through the Refuge that fed to a public road. *Id.* at 575. Eventually, FWS took issue with the unrestricted passage through Refuge lands, so, pursuant to the Refuge Act, it announced new permit conditions to restrict the hours of passage, prohibit overnight parking, and limit the use of certain vehicles. *Id.* at 576. The School Board signed the permit and did not seek judicial review. *Id.* Instead, it filed a state court suit seeking to enforce its rights of passage under state law. *Id.* The DOI did not dispute the School Board's right of way but instead sought to assert FWS's authority to impose conditions on the School Board's right of way pursuant to the Refuge Act. *Id.* As relevant here, the School Board challenged the permit and its conditions under the QTA, instead of the APA. *Id.* at 579–80. On appeal, however, the Fifth Circuit determined that "[n]othing in the text of the QTA suggests that it authorizes a suit to collaterally challenge a permit issued by a federal agency," and thus, the School Board's claims should have been brought under the APA. *Id.* at 579–80.

Plaintiff attempts to analogize Defendants' interference with the Brown Family's existing or future uses of its property by eliminating Crow Hill Trail with the permit in *Avoyelles* (Dkt. #59 at pp. 10–13). In doing so, Plaintiff insists that the APA is the proper vehicle through which he may pursue his claims (Dkt. #59 at pp. 10–13). Not so. The fundamental issue at hand—whether Plaintiff has a valid easement in Crow Hill Trail that complies with the restricted scope described in the 1943 Judgment—does not require a collateral attack on a permit issued by a federal agency. Plaintiff sources his right to an easement from the 1943 Judgment which granted a reservation for "ingress and egress to drill" and was later honored by PLO 314 establishing that Hagerman Refuge "shall not interfere with any existing or future uses" (Dkt. #1-2). Plaintiff views Crow Hill Trail as no longer limited to the scope of the original Judgment (Dkt. #1 at pp. 7–10; Dkt. #59 at pp. 9–10). Thus, he seeks to formalize Crow Hill Trail as an easement (Dkt. #1 at p. 24). Defendants, however, do not recognize Crow Hill Trail as an easement in any capacity, formal or otherwise (Dkt. #52 at pp. 3–4). This fundamentally differs from *Avoyelles*, which turned on the validity and scope of a permit issued by the DOI, the challenge to which could only be brought under the APA. *Avoyelles*, 647 F.3d 570, 579. Here, Plaintiff is asking the Court to "vindicate [his] preexisting rights and to transform the nature of those rights from a legal servitude into a fixed conventional servitude." *Id.* at 580. Such an action falls directly and exclusively under the QTA because it is an issue of title that does not turn on the validity and scope of a permit. *Id.* Thus, *Avoyelles* is inapposite.

Undeterred, Plaintiff objects to his claim being classified as a QTA claim because the property interest in question is an easement, rather than a fee simple absolute ownership interest (Dkt. #59 at pp. 7–8). So, the argument goes, the easement dispute does not qualify as a "disputed title to real property" for which the QTA provides the exclusive remedy (Dkt. #59 at pp. 7–8). 28

U.S.C. § 2409a(a). While the Court acknowledges this difference, the Court is persuaded by other courts within this Circuit that have considered easements and other non-fee simple interests to be title issues within the purview of the QTA. *See Mafrige v. United States*, 893 F. Supp. 691, 698 (S.D. Tex. 1995), *aff'd*, 189 F.3d 466 (5th Cir. 1999) (quoting *Werner v. United States*, 9 F.3d 1514, 1516 (11th Cir. 1993) ("A party need only claim some ownership in the property to create 'disputed title to real property.'")); *Avoyelles*, 647 F.3d at 580 ("The legislative history of the QTA 'indicates that Congress intended easements to be included in the real property rights adjudicated in a quiet title action.'"). Treating easements and other property interests as title issues under the QTA also finds support in other circuits. *See, e.g.*, *Kinscherff v. United States*, 586 F.2d 159, 161 (10th Cir. 1978) ("Easements are real property interests subject to quiet title actions."); *Robinson v. United States*, 586 F.3d 683, 686 (9th Cir. 2009) ("This court has repeatedly held that both disputes over the right to an easement and suits seeking a declaration as to the scope of an easement fall within the purview of the QTA."); *see also McKenzie Cnty., ND v. United States*, 131 F.4th 877, 892 (8th Cir. 2025) ("We have previously permitted challenges to the scope of land taken in a prior condemnation action to proceed under the Quiet Title Act."). Accordingly, the Court agrees that the QTA should not be interpreted so restrictively so as to include only disputes over fee simple title instruments.

What's more, though the Court does not base its decision on legislative history, it is instructive here. Indeed, the Fifth Circuit recognized in *Avoyelles* that "'Congress intended easements to be included in the real property rights adjudicated in a quiet title action.'" *Avoyelles*, 647 F.3d at 580 (quoting *Kinscherff*, 586 F.2d at 161 (citing H.R. REP. NO. 92–1559, at 8 (1972), *reprinted in* 1972 U.S.C.C.A.N. 4547, 4552 ("The quieting of title where the plaintiff claims an estate less than a fee simple—an easement or the title to minerals—is likewise included in the terms

9

of the proposed statute.")). Thus, the legislative history counsels in favor of bringing this action under the QTA.

In sum, the QTA "provide[s] the exclusive means by which adverse claimants [can] challenge the United States' title to real property." *Block*, 461 U.S. at 286. Though Plaintiff correctly observes that the QTA "does not extend broadly to any and all matters concerning property," (Dkt. #59 at p. 11) the Fifth Circuit and its sister circuits, as well as the legislative history of the QTA, suggest that it does extend to easements. *See, e.g.*, *Avoyelles*, 647 F.3d at 580; *Kinscherff*, 586 F.2d at 161; *McKenzie Cnty.*, 131 F.4th at 892. Consequently, the Court will permit Plaintiff to amend his Complaint and convert his APA claim to a QTA claim.

## II.    QTA Statute of Limitations

Having determined that the QTA applies, the Court now turns to whether Plaintiff's claim is barred by limitations. QTA actions brought by private parties must be brought within twelve years of the date upon which the claim accrued. 28 U.S.C. § 2409a(g). A QTA claim accrues when the "plaintiff or predecessor in interest knew or should have known of the claim of the United States." *Id*. Thus, the narrow question is when Plaintiff knew or should have known about Defendants' claim in the alleged Crow Hill Trail easement. The answer is 2020, when Defendants acted adversely to Plaintiff's use of the easement.

As a threshold matter, QTA claims are not subject to equitable tolling. *See Wilkins v. United States*, 598 U.S. 152, 161–65 (2023) (collecting cases and reiterating that equitable tolling is not available for QTA claims). According to the United States Supreme Court, this is true because "it is of special importance that landowners know with certainty what their rights are, and the period during which those rights may be subject to challenge." *United States v. Beggerly*, 524 U.S. 38, 49 (1998). However, while equitable tolling is not explicitly available under the statute, "by providing

that the statute of limitations will not begin to run until the plaintiff 'knew or should have known of the claim of the United States,'" § 2409a(g) "effectively allow[s] for equitable tolling." *Id.* at 48 (citing *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990)). Accordingly, equitable tolling is already incorporated into the generous QTA statute of limitations. *Id.*

To start the clock on the limitations period, "[k]nowledge of the claim's full contours is not required." *Knapp v. United States*, 636 F.2d 279, 283 (10th Cir. 1980). Indeed, "all that is necessary is a reasonable awareness that the government claims some interest *adverse* to the plaintiff." *Id.* (emphasis added); *see also Lafargue v. US Dep't. Interior Fish & Wildlife Serv.*, No. CIV.A. 10-1375, 2012 WL 4471550, at*1 (W.D. La. Sept. 26, 2012); *Crooks v. Placid Oil Co.*, 166 F. Supp. 2d 1104, 1109 (W.D. La. 2001), *aff'd*, 48 F. App'x 916 (5th Cir. 2002). Therefore, actual or constructive knowledge of the United States' adverse interest will do.

Here, Defendants held the condemned tract in fee simple absolute, but the 1943 Judgment explicitly gave Plaintiff a reservation for ingress and egress to drill (Dkt. #1-3). The Judgment was recorded and the Brown Family used Crow Hill Trail to access both tracts (Dkt. #1 at p. 8). In the nearly eighty years since Plaintiff began using Crow Hill Trail, Defendants have never communicated their opposition to Plaintiff using the trail, nor have they recorded any document renouncing Plaintiff's right to access the property for drilling (*See* Dkt. #1; Dkt. #59). Plaintiff admits that he knew that Defendants had an interest in the land because they held the land in fee simple absolute (Dkt. #1-3). Yet Defendants' interest did not become adverse to Plaintiff's until 2020, when the Corps denied Plaintiff's request to formalize Crow Hill Trail as an easement, erected a barbed-wire fence to restrict access to the trail, and subsequently destroyed Crow Hill Trail (Dkt. #1 at pp. 9–10). Thus, Plaintiff's claim accrued on one of two dates: March 24, 2020,

when the Corps formally objected to Plaintiff's easement request, or May 4, 2020, when Defendants physically impaired Plaintiff from accessing Crow Hill Trail (Dkt. #1 at p. 10). However, since both dates fall well within the QTA's twelve-year limitations period, the Court need not determine which date triggered the limitations clock.

The Court is even more persuaded by the outcome in *Werner v. United States*, given its extraordinary similarity to the facts here. 9 F.3d 1514 (11th Cir. 1993). In *Werner*, the plaintiff claimed an easement by necessity for a private road on government-owned land to access the nearest public road. *Id.* at 1516. The plaintiffs had used the road in question without issue until the government erected a gate at the end of the road, denying the plaintiffs access to their property. *Id.* The *Werner* court found that the limitations question turns upon whether the plaintiffs had been permitted to utilize the road for access to plaintiffs' property and when the plaintiffs knew, or should have known, that the government had changed its position by denying use of the roadway. *Id.* at 1519. Put differently, the first step is to "define the government's claim and then one must look to the time that the government, acting adversely to the interests of others, seeks to expand that claim." *Id.* Because the government had previously allowed the plaintiffs access to the road but later restricted that permitted use, the court determined that the twelve-year QTA statute of limitations began on the date that access was denied to the plaintiffs, rather than when the plaintiffs learned that the government owned the land. *Id.*

Here, the Court is presented with nearly identical facts. Plaintiff had unrestricted access to the property via Crow Hill Trail until Defendants changed their position by denying denied Plaintiff's request to formalize Crow Hill Trail as an easement and removing the Crow Hill Trail gate and gravel (Dkt. #1 at pp. 8, 12). It was that denial and prevention of access to the trail that

made the parties adverse and triggered the twelve-year limitations period. Thus, supported by the outcome in *Werner*, the Court finds that Plaintiff's QTA claim accrued in 2020 when Defendants denied Plaintiff access to Crow Hill Trail because that action made their interest adverse to Plaintiff's interest. Because Plaintiff brought his claim just three years after it accrued (*See* Dkt. #1), the QTA's twelve-year limitations period has not run and does not bar this claim.

Because Plaintiff's claim is not cognizable under the APA, the Court will allow Plaintiff to amend his Complaint to include a QTA claim pursuant to Rule 15(a)(2). FED. R. CIV. P. 15(a)(2). Further, Plaintiff's QTA claim is not barred by limitations because it did not begin to accrue until 2020—well within the QTA's twelve-year limitations period.

## CONCLUSION

It is therefore **ORDERED** that Defendants' Motion to Dismiss (Dkt. #52) is hereby **DENIED.**

**IT IS SO ORDERED.**

**SIGNED this 12th day of June, 2025.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE